IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>SCOTT WOMBOLD,<br><br>    Defendant. | No. 3:16-CR-20<br>Judge Curtis L. Collier<br>Magistrate Judge H. Bruce Guyton |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT SCOTT WOMBOLD'S MOTION TO DISQUALIFY

### INTRODUCTION

"A fair trial in a fair tribunal is a basic requirement of due process." *Anderson v. Sheppard*, 856 F.2d 741, 746 (6th Cir. 1988) (quoting *In re Murchison*, 349 U.S. 133, 136 (1955)); *see also Williams v. Pennsylvania*, 136 S. Ct. 1899, 1905, 1909-19 (2016). Fairness requires that tribunals "shall not only be impartial in the controversies submitted to them but shall give assurance that they are impartial, free . . . from any 'bias or prejudice' that might disturb the normal course of impartial judgment." *Anderson*, 856 F.2d at 745 (quoting *Knapp v. Kinsey*, 232 F.2d 458, 465-67 (6th Cir. 1956)). This requirement of neutrality "serves dual interests of equal importance" by ensuring that "each litigant receives a fair trial as determined by those learned in the law, but also engenders the faith in the integrity of this country's tribunals that is so unquestionably vital to this government's existence." *Id.* at 746. Given the fundamental importance of public confidence in the judiciary to a democratic society, "our system of law has always endeavored to prevent even the probability of unfairness." *Id.* at 745 (quoting *In re Murchison*, 349 U.S. at 136).

Courts have long recognized that "justice must not only be done[,] but must manifestly *be seen to be done.*" *Id.* at 746 (quoting *Rex v. Bodmin Justices*, 1 K.B. 321, 325 (1947)) (emphasis added). The appearance of bias is as troublesome to the administration of justice as bias in fact. Recognizing as much, 28 U.S.C. § 455(a) and the Code of Conduct for United States Judges both require federal judges to recuse themselves not only from proceedings in which they are actually biased against one of the parties before them, but also from those proceedings where their impartiality "might reasonably be questioned." 28 U.S.C. § 455(a); Code of Conduct for United States Judges, Canon 3C (*rev.* Mar. 12, 2019).

Disqualification is necessary here to protect both Mr. Wombold's constitutional right to a fair tribunal, as well as the public's confidence in the impartiality of the federal courts. As set forth below, the Court's on-the-record commentary during Mr. Wombold's original trial and sentencing would lead a reasonable observer to question the Court's impartiality. Consequently, the law demands disqualification in this instance, and the Court should grant Mr. Wombold's Motion to Disqualify.[1]

## STANDARD OF DECISION

Section 455 requires any federal judge to disqualify himself "in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a).[2] Section 455 is both mandatory and self-executing—that is, no matter the circumstances, disqualification is required

---

[1] Mr. Wombold does not make this Motion lightly. While Mr. Wombold appreciates the time and effort the Court and its staff have dedicated to this case over the past several years, he believes disqualification under 28 U.S.C. § 455(a) is essential both to preserve his constitutional right to an impartial tribunal and to protect the public's perception of the federal courts as impartial arbiters of the proceedings brought before them.

[2] Canon 3(C) of the Code of Conduct for United States Judges similarly admonishes, in relevant part: "A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned . . . ."

(*sua sponte*, if necessary) upon a determination that impartiality might be reasonably questioned. *Roberts v. Bailar*, 625 F.2d 125, 128-29 (6th Cir. 1980). Even where the question of impartiality is a close one, the presiding judge must recuse in order to "protect the indispensable semblance of fairness" required in federal proceedings. *Id.*; *see also Union Planters Bank v. L & J Dev. Co.*, 115 F.3d 378, 383 (6th Cir. 1997) (quoting *United States v. Dandy*, 998 F.2d 1344, 1349 (6th Cir. 1993)).[3]

Both the Supreme Court and the Sixth Circuit have emphasized that a motion for disqualification under Section 455 is "not based on the subjective view of a party"; rather, it "imposes an objective standard: a judge must disqualify himself where a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *Burley v. Gagacki*, 834 F.3d 606, 616 (6th Cir. 2016) (internal citations and quotations omitted); *see also Liteky v. United States*, 510 U.S. 540, 548 (1994) (finding that "what matters is not the reality of bias or prejudice but its appearance"); *United States v. Adams*, 722 F.3d 788, 837 (6th Cir. 2013). Put another way, Section 455 requires "not only that a judge be subjectively confident of his ability to be evenhanded, but also that an informed, rational, objective observer would not doubt his impartiality." *In re Bernard*, 31 F.3d 842, 844 (9th Cir. 1994). Where an objective observer could reasonably question the presiding judge's impartiality, disqualification is mandatory.

---

[3] The duty to sit doctrine, which this Court has previously addressed in a motion for recusal under 28 U.S.C. § 144, *Madden v. Chattanooga City Wide Serv. Dep't*, No. 1:06-CV-213, 2007 WL 9771349, at *2 (E.D. Tenn. Oct. 22, 2007), should not be applied to motions under Section 455(a). *See Roberts*, 625 F.2d at 128-29 (expressly noting that Congress's decision to enact what is now Section 455(a) represented an intentional departure from the duty to sit doctrine).

3

# BACKGROUND

Mr. Wombold was one of four defendants tried before a jury in a highly publicized, vehemently contested prosecution alleging conspiracy, fraud, and other charges related to rebates offered to certain customers by Pilot Flying J. Mr. Wombold was charged with seven counts: one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 (Count 1), three counts of wire fraud in violation of 18 U.S.C. § 1343 (Counts 2-4), and three counts of making false statements in violation of 18 U.S.C. § 1001 (Counts 11-13). The trial included testimony from 28 government witnesses and the admission of hundreds of exhibits, and it took place over the course of 27 trial days spread out over four months. The jury acquitted Mr. Wombold on six of the seven counts brought against him. Mr. Wombold was convicted of only one count of wire fraud (Count 2) in connection with an email he sent on February 11, 2011 (the "2/11/11 Email") that caused, at most, $7,042 in losses to a single victim. (Jury Verdict, Dkt. 484, PageID# 12376-78; Transcript, Dkt. 518, PageID# 13315-17).

Following the jury's verdict, the Court sentenced Mr. Wombold to 72 months' imprisonment and a $75,000.00 fine. (Judgment, Dkt. 743). The Court based Mr. Wombold's sentence and Guidelines range not only on the single victim and $7,042.00 in losses explicitly alleged in Count 2, but also on $4.3 million in losses and 45 other victims associated with Brian Mosher's fraudulent conduct following Mr. Wombold's 2/11/11 Email. (Sentencing Tr., Dkt. 741, PageID# 20765-66; Gov't Ex. 5087-B).[4] In reaching that result, the Court held that $4.3 million in losses attributable to Brian Mosher's fraud against 45 other victims constituted "relevant conduct"

---

[4] Mr. Mosher pled guilty to conspiracy to commit mail and wire fraud, and testified on behalf of the Government at trial.

4

for purposes of calculating Mr. Wombold's appropriate Guidelines range. (Sentencing Tr., Dkt. 735, PageID# 20634-40).

In response, Mr. Wombold's counsel orally moved at the sentencing hearing for Mr. Wombold's release pending appeal under 18 U.S.C. § 3143 on the basis of his objections to the sentence imposed by the Court, including his objections to the scope of relevant conduct considered under the Sentencing Guidelines. The Court subsequently engaged in the following exchange with counsel for Mr. Wombold:

> THE COURT: Let's assume that, as you've done here, you do excellent work and you convince the Sixth Circuit that your arguments are correct, that dumb Judge Collier down in Chattanooga messed up the guidelines, and the guidelines were not the ones he found, the guidelines were what you recommend. What would the Sixth Circuit do then?
>
> MR. RICHARDSON: My understanding is that they would remand for a new sentencing.
>
> THE COURT: And the case would come to who?
>
> MR. RICHARDSON: You.
>
> THE COURT: It would come back to Judge Collier.
>
> MR. RICHARDSON: Yes.
>
> THE COURT: And did Judge Collier say sometime today that because of the facts and circumstances of this case and the wide range of the scheme to defraud, that the Court thought that a sentence above the guidelines could be justified, but because the guidelines were where they were, the Court has decided to stay within the guidelines?
>
> MR. RICHARDSON: Well, Your Honor, I guess I would be specu- -- I guess I would be speculating as to what the Court would do to the extent the Sixth Circuit says, "You know, the guidelines should have been four to ten." I'd be speculating.
>
> THE COURT: Well, I think that's good. Let's say they're four to ten. *If the case comes back to the judge and the judge thinks that this would be a case where you could justify a sentence above the present guideline range, and the case comes back with a guidelines of four to ten months, and the judge has already gone on*

5

> *the record in front of a lot of witnesses that the judge thought a sentence above 70 months was justified by the facts* –
>
> MR. RICHARDSON: Well, I do think –
>
> THE COURT: – what do you think the judge would do then?
>
> MR. RICHARDSON: Well, I think that the judge may be inclined to give an above-guidelines sentence, but –
>
> THE COURT: Which would be legal, would it not?
>
> MR. RICHARDSON: It would, Your Honor. But I do think – And of course we're dealing with hypotheticals. I do think that if the Sixth Circuit were to say, you know, the way – the way the trial court viewed sort of the conduct -- its view of the facts and circumstances was a little bit different than the way we're saying it should have, I don't know that the Court would vary upward rather than top of the guidelines – top of the new guidelines. Now, you would know better than I your inclination and how would you act under those circumstances, how you would perceive it. I just can't say, from where I'm sitting, that we'd definitely be looking at an above-guidelines sentence. I think you have pointed to some facts that express your attitude about what sentence is necessary. But if the Sixth Circuit says, "Look, as a matter of law, we think the amount of loss view of the trial court was way off," it could have a substantial impact on a trial judge. As for yourself and how you would view it, you would know better than I. But I could see that having a big effect that would affect the trial court's decision whether to vary upward from even a lower new guidelines range.

(Sentencing Tr., Dkt. 741, PageID# 20787-89 (emphasis added)). Although there was no further dialogue beyond Mr. Richardson's final argument, there is no question what the Court intended in its exchange. To any objective observer, the Court's commentary during this colloquy indicated an intent to sentence Mr. Wombold to 72 months' imprisonment regardless of the Sixth Circuit's decision on relevant conduct or other application of the Sentencing Guidelines, as well as the merits of any evidence that might be presented at a new trial and sentencing hearing. (*Id.* at 20788).

On October 14, 2020, the Sixth Circuit reversed Mr. Wombold's sole count of conviction and remanded the matter for a new trial. Mr. Wombold is now placed in a difficult position. He will enter this Court's courtroom for the second time—in a trial with an arbiter who possesses

6

substantial discretion in pretrial, trial, and sentencing decisions—with the knowledge that this Court has already predetermined a sentence in the event of a conviction, regardless of what the appellate court might have said about the application of the Sentencing Guidelines or any new evidence or arguments that may arise in subsequent proceedings.

## ARGUMENT

One of the most sacred principles in the American criminal justice system is that a defendant is presumed innocent until proven guilty. That principle is put to the test when the Court oversees the retrial of a criminal defendant who must return to the same courtroom in which he was convicted and sentenced. Of course, such a scenario is not uncommon. But when it does occur, the Court must ensure that any reasonable observer would be assured that the principle remains true and that the judge overseeing the proceeding does not adhere to preconceived views, particularly on questions over which the judge has considerable discretion, such as sentencing. The circumstances present here do not provide such an assurance.

As set forth below, the Court's colloquy regarding its intent to sentence Mr. Wombold to 72 months' imprisonment regardless of the Sixth Circuit's views on the scope of relevant conduct, the appropriate Guidelines range, or the facts or evidence presented at a retrial would leave any reasonable observer with serious doubts about this Court's ability to hear Mr. Wombold's case impartially on remand. Such commentary would cause a reasonable observer to believe that not only is Mr. Wombold's above-Guidelines sentence a foregone conclusion (in the event of a conviction), but that even his presumption of innocence on the sole remaining count is at risk. Such belief would only be compounded by other comments and instructions made by the Court throughout Mr. Wombold's trial, which could be reasonably perceived as indicative of prejudice

7

toward Mr. Wombold.[5] Accordingly, this Court should grant Mr. Wombold's Motion to Disqualify.

Courts have held that a reasonable person would question a judge's impartiality when his or her comments on the record "connote[ ] a fixed opinion—'a closed mind on the merits of the case.'" *United States v. Haldeman*, 559 F.2d 31, 136 (D.C. Cir. 1976); *see also Liteky*, 510 U.S. at 558. Justice Kennedy in *Liteky* specifically observed: "If, for instance, a judge presiding over a retrial should state, based upon facts adduced and opinions formed during the original cause, an intent to ensure that one side or the other shall prevail, there can be little doubt that he or she must recuse." *Liteky*, 510 U.S. at 558 (Kennedy, J., concurring in judgment) (citing *Rugenstein v. Ottenheimer*, 152 P. 215, 216 (Or. 1915) (reversing judge's failure to disqualify himself on retrial where judge had stated at the original trial: "This case may be tried again, and it will be tried before

---

[5] For example, as a condition of the admissibility of certain emails offered to prove the contents of what they conveyed (not to prove the truth of the matter asserted), the Court required Mr. Wombold's counsel to "stipulate that the jury should consider everything in the document to be untrue" and should "disbelieve everything in the document." (Transcript, Dkt. 429, PageID# 10777-78). The Court—in the jury's presence—proposed to instruct the jury that it could "never, ever under any circumstances assume that anything at all in the documents is true. In fact, you must assume the exact opposite, that every line, every word, every letter in the document is false." (*Id.* at 10778-79). That instruction was inconsistent with the way non-hearsay evidence should be treated under the Federal Rules of Evidence. The impact of the Court's decision was not lost on the jury or those in the gallery. Indeed, laughter was noted on the trial transcript when the Court so instructed the jury. (*Id.* at 10781). Though it was an erroneous evidentiary ruling, it can still serve as evidence of the Court's partiality. *United States v. Marin*, 662 F. Supp. 2d 155, 158 (D.D.C. 2009) ("Although a legal ruling may not itself serve as the basis for a motion to disqualify, a particular judicial ruling can be *evidence* of an extrajudicial bias or prejudice.") (quoting *United States v. Heldt*, 668 F.2d 1238, 1272 n. 72 (D.C. Cir.1981)).
On several other occasions throughout the trial, the Court made its opinions of Mr. Wombold and his codefendants clear by making comments in the presence of the jury comparing the scheme alleged by the Government to a drug-running scheme by the *Medellín* cartel—an infamously violent and powerful Colombian drug cartel. (*See, e.g.*, Transcript, Dkt. 336, PageID# 7428-29; Transcript, Dkt. 337, PageID# 7564; Transcript, Dkt. 521, PageID# 13723-26).

8

me. I will see to that. And I will see that the woman gets another verdict and judgment that will stand.")).

The Sixth Circuit has specifically held that "the objective appearance of impartiality vanishe[s]" when a district judge expresses "ardent sentiments" about a party or witness. *Roberts*, 625 F.2d at 127-30 (holding the appearance of justice required disqualification where district judge commented on the record about his views on the character of a key witness and former defendant in the case at bar); *see also United States v. Cota-Luna*, 891 F.3d 639, 650-51 (6th Cir. 2018) (concluding reassignment necessary to preserve the appearance of justice where district judge had indicated it was "predisposed to imposing harsh sentences on both defendants, and [where] the district court relied on legally erroneous interpretations of the guidelines").

Further, the Sixth Circuit recently cited a Third Circuit decision in a case requiring disqualification on similar facts. *In re Prescription Opiate Litig.*, No. 19-3935, 2019 WL 7482137, at *2 (6th Cir. Oct. 10, 2019) (citing *United States v. Antar*, 53 F.3d 568, 573-74 (3d Cir. 1995), *overruled on other ground by Smith v. Berg*, 247 F.3d 532, 534 (3d Cir. 2001)). In *Antar*, the Third Circuit held that recusal was required when a district judge made the following commentary at a defendant's sentencing hearing in considering the amount of restitution to award: "My object in this case from day one has always been to get back to the public that which was taken from it as a result of the fraudulent activities of this defendant and others." *Antar*, 53 F.3d at 573. In so holding, the Third Circuit considered a hypothetical situation where "at sentencing the district judge informs a defendant that throughout the trial his object had been to see the defendant behind bars" and reasoned that "[a] reasonable observer in such a scenario would have serious reason to question whether prior rulings in the case were based on impartial considerations or on the judge's stated goal." *Id.* at 576. The Third Circuit emphasized that the district court's comments at sentencing

9

were particularly troubling because "the best way to effectuate the district judge's [stated] goal would have been to ensure that the government got as free a road as possible towards a conviction, which then would give the judge the requisite leverage to order a large amount of restitution. And it goes without saying that this is an improper role for a district judge during a criminal trial." *Id.*

The principle of *Antar* applies with full force here, where the Court previously suggested it was determined to sentence Mr. Wombold to 72 months' imprisonment for participation in the scheme alleged by the Government, irrespective of the Sixth Circuit's rulings on the scope of relevant conduct, the use of relevant conduct under the Sentencing Guidelines, or even the facts or evidence that might be adduced during a retrial. (Sentencing Tr., Dkt. 741, PageID# 20787-89). Indeed, as the Third Circuit in *Antar* emphasized, a reasonable observer would conclude that the easiest way for the Court to accomplish its stated goal would be to "ensure the government got as free a road as possible" to a conviction so that the Court could exercise its significant discretion at sentencing to ensure Mr. Wombold received a prison term of 72 months. Under the circumstances, a reasonable observer would have "serious reason" to question whether the Court is capable of serving as an impartial tribunal on remand, especially with respect to sentencing. *Antar*, 53 F.3d at 567-77.

While the Court did not state outright that it would sentence Mr. Wombold to 72 months' imprisonment on remand, its intention to do so was made perfectly clear. The Sixth Circuit has recognized that trial judges "can communicate hostility and bias" in ways that are not apparent "from a reading of a 'cold' written record of the proceedings." *Anderson v. Sheppard*, 856 F.2d 741, 746 (6th Cir. 1988). The tenor of the Court's comments at Mr. Wombold's sentencing would have given any observer in the courtroom that day a compelling reason to believe that the Court prejudged the outcome of this case and will import any such biases into Mr. Wombold's future

10

Case 3:16-cr-00020-CLC-HBG   Document 1007   Filed 05/14/21   Page 10 of 11   PageID #: 22770

sentencing in the event he is convicted in the new trial. That interpretation would only be amplified when viewed in the context of the Court's other comments and rulings described herein. *See supra* n. 5.

The Court's recusal is necessary to protect both Mr. Wombold's right to a fair trial and the public's interest in the appearance of fairness in judicial proceedings. The public's confidence in the federal judiciary would suffer if the Court were to hear this case on remand in light of its comments at sentencing that were reasonably understood as dismissive of the importance of ascertaining relevant conduct and its role in application of the Sentencing Guidelines. The Court's comments and rulings throughout the original trial only bolster that result.

## CONCLUSION

Mr. Wombold does not request this relief lightly. But, for the reasons set forth herein, the Court's disqualification is necessary to protect Mr. Wombold's statutory and constitutional right to a fair trial. Accordingly, Mr. Wombold respectfully requests that the Court grant his Motion to Disqualify.

Dated this 14th day of May, 2021.

        Respectfully submitted,

        */s/ John E. Kelly*
        John E. Kelly (admitted *pro hac vice*)
        BASS, BERRY & SIMS PLC
        1201 Pennsylvania Avenue, NW, Suite 300
        Washington, DC 20004
        Telephone: (202) 827-2953
        jkelly@bassberry.com

        **Counsel for Defendant Scott Wombold**